# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36124

| | | |
|---|---|---|
| ALCOHOL BEVERAGE CONTROL, | ) | |
| | ) | Lewiston, April 2010 Term |
| Plaintiff-Appellant, | ) | |
| | ) | 2010 Opinion No. 42 |
| v. | ) | |
| | ) | Filed: April 23, 2010 |
| GORDON J. BOYD, licensee d/b/a SHOT GLASS, | ) | |
| | ) | Stephen Kenyon, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Clearwater County. Hon. John H. Bradbury, District Judge.

The decision of the district court is <u>reversed</u> and the case is <u>remanded</u>

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Jenny Grunke argued.

John R. Hathaway, Orofino, for respondent. Christopher S. Lamont argued.

_____

HORTON, Justice

This is an appeal from a district court's order reversing an administrative hearing officer's decision to suspend Gordon Boyd's retail alcohol license. We reverse the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not in dispute. Between the late evening of September 15, 2006, and the early morning of September 16, 2006, two undercover Alcohol Beverage Control (ABC) officers, Corporal Tim Davidson and Sergeant Greg Harris, who are trained to identify intoxicated people, arrived at the Shot Glass bar in Orofino, Idaho. Boyd is the owner and operator of the Shot Glass. Davidson and Harris observed an individual at the Shot Glass who was getting too close to people and being so loud and boisterous that people were moving away from him. The individual smelled of alcohol and had a flushed face, bloodshot eyes, and slurred speech, and was swaying, staggering, and stumbling into people and furniture and knocking things off the bar. After witnessing this behavior, Davidson and Harris further observed Dawn

Moler, one of the Shot Glass bartenders, serve alcohol to the individual. Davidson and Harris identified the customer as Justin Anderson. Harris made contact with Anderson, who was argumentative and unable to comprehend Harris' questions. Davidson cited Moler for a misdemeanor violation of I.C. § 23-615 for serving an obviously intoxicated person.[1]

Based upon the events described above, ABC filed administrative violation notice 06ABC-COM077, along with a complaint seeking suspension of Boyd's license under authority of I.C. § 23-933, alleging that I.C. § 23-615 was violated when Moler served alcohol to Anderson, who was obviously intoxicated.[2] Boyd moved to dismiss the complaint on grounds that I.C. § 23-615 is unconstitutionally vague and indefinite. The hearing officer declined to rule on the motion to dismiss because the Idaho Administrative Procedure Act (IDAPA) 04.11.01.415 precludes a hearing officer from determining the constitutionality of a statute.

A hearing was held on November 15, 2007, at which Moler testified that from her bartending experience she was very familiar with the way Anderson would act whenever he was intoxicated, including his taking on a "cocky attitude" and his failure to "walk normal." The hearing officer noted that although Moler testified that she did not believe Anderson to be intoxicated at the time she admittedly served him two beers, Harris and Davidson testified that they observed Anderson at the time Moler served him exhibiting the very characteristics that Moler described. The hearing officer also considered the testimony of Orofino Sheriff Deputy Carson, who observed that Anderson had bloodshot eyes and was belligerent towards Harris. The hearing officer concluded, based on the testimony of Moler, Davidson, Harris, and Carson, that Anderson was apparently or obviously intoxicated when Moler served him, and thus issued a preliminary order suspending Boyd's retail alcohol beverage license. Boyd did not seek agency review, and the order became final on December 18, 2007.

Boyd appealed to the district court and moved for a stay of the suspension, which the district court granted. The district court concluded that the hearing officer did not err in concluding that Anderson was obviously intoxicated when Moler served him, yet ultimately concluded that I.C. § 23-615 is facially unconstitutional for overbreadth and vagueness. The

---

[1] ABC referred the case to the city attorney, who in turn referred it to the county prosecutor. The prosecutor dismissed the charge.

[2] ABC filed a second notice of violation and complaint for suspension based upon events observed by the same officers at the Shot Glass on the evening of September 16, 2006; however, the hearing officer found that there was an insufficient showing of the state of intoxication of the patron who was allegedly overserved. Accordingly, this second alleged violation did not come before the district court.

court reversed the hearing officer's decision and remanded the case. ABC timely appeals the district court's decision regarding the statute's constitutionality. Boyd does not challenge the district court's conclusion that substantial competent evidence supported the hearing officer's determination that Moler served alcohol to an obviously intoxicated person.

## II. STANDARD OF REVIEW

Generally, "[w]here a district court acts in its appellate capacity pursuant to the Idaho Administrative Procedure Act (IDAPA), this Court reviews the agency record independently of the district court's decision." *Cooper v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 134 Idaho 449, 454, 4 P.3d 561, 566 (2000) (citations omitted). In this case, however, the agency was unable to consider the constitutionality of the statute in question, because "[p]assing on the constitutionality of statutory enactments, even enactments with political overtones, is a fundamental responsibility of the judiciary, and has been so since *Marbury v. Madison*, 5 U.S. (1 Cranch) 137." *Miles v. Idaho Power Co.*, 116 Idaho 635, 640, 778 P.2d 757, 762 (1989) (citations omitted). Therefore, we directly review the district court's decision regarding the constitutionality of I.C. § 23-615.

> The constitutionality of a statute is a question of law. The party challenging a statute on constitutional grounds bears the burden of establishing the statute is unconstitutional and "must overcome a strong presumption of validity." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990).
> This Court exercises free review over the trial court's conclusions of law to determine if the trial court correctly stated the principles of law and if the legal conclusions are supported by the facts as found. The Court is "free to draw its own conclusions from the facts presented." *Kootenai Elec. Coop. v. Washington Water Power Co.*, 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995).

*BHA Invs, Inc. v. State*, 138 Idaho 348, 351, 63 P.3d 474, 477 (2003) (citations omitted). Appellate courts are obligated to seek an interpretation of a statute that upholds its constitutionality. *State v. Newman*, 108 Idaho 5, 13, n.12, 696 P.2d 856, 864 n.12 (1985).

"The Court will defer to the agency's findings of fact unless those findings are clearly erroneous and unsupported by evidence in the record." *Cooper*, 134 Idaho at 454, 4 P.3d at 566. "This Court may not substitute its judgment for that of the agency as to the weight of the evidence on factual matters. I.C. § 67-5279(1)." *Id.*

> A strong presumption of validity favors an agency's actions. The agency's action may be set aside, however, if the agency's findings, conclusions, or decisions (a) violate constitutional or statutory provisions; (b) exceed the

agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence on the record as a whole; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). In addition, this Court will affirm an agency action unless a substantial right of the appellant has been prejudiced. I.C. § 67-5279(4).

*Id.*

### III. ANALYSIS

The district court held that I.C. § 23-615 is facially unconstitutional because it is both overbroad and vague. We consider each issue in turn.

**A. The district court erred in holding that I.C. § 23-615 is unconstitutionally overbroad on its face.**

In considering whether I.C. § 23-615 is constitutionally overbroad, the district court stated that "Idaho Code section 23-615 directly affects the constitutionally protected property right to continue to operate a business. The statute is, therefore, overbroad." Boyd makes the same assertion on appeal. This conclusion, however, represents a fundamental misunderstanding of the law.

The district court's conclusion that the business of retailing alcohol is a "constitutionally protected property right" is incorrect. The United States Constitution states in relevant part that "[t]he transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2. In turn, the Idaho Constitution states in relevant part that "the legislature of the state of Idaho shall have full power and authority to permit, control and regulate or prohibit the manufacture, sale, keeping for sale, and transportation for sale, of intoxicating liquors for beverage purposes." Idaho Const. art. III, § 26. Since this section in Idaho's constitution gives the Legislature full power and authority to regulate intoxicating liquor for beverage purposes, the judicial department of the State may not deprive it of such power. *Taylor v. State*, 62 Idaho 212, 219, 109 P.2d 879, 881 (1941). The district court's statement that there is a protected property right in the business of selling alcohol attempts just such a deprivation and would, if given effect, violate both the United States and Idaho constitutions.

Instead of a protected property right,

> [a] liquor license is simply the grant or permission under governmental authority to the licensee to engage in the business of selling liquor. Such a license is a temporary permit to do that which would otherwise be unlawful; it is a

privilege rather than a natural right and is personal to the licensee; it is neither a right of property nor a contract, or a contract right.

*BHA Invs, Inc.*, 138 Idaho at 354-55, 63 P.3d at 480-81 (quoting *Nampa Lodge No. 1389, Benev. and P.O. of E. of U. S. v. Smylie*, 71 Idaho 212, 215-16, 229 P.2d 991, 993 (1951)). "[T]hus one who procures a state . . . license takes it subject to the provisions of the statute under which the license is granted." *Nampa Lodge*, 71 Idaho at 216; 229 P.2d at 993. Idaho Code § 23-102 explains the reason for such regulation:

> This act is passed in the exercise of the police power of the state. It is not designed to abridge the personal privilege of a responsible adult to consume alcoholic liquor as a beverage, except in cases of the abuse of that privilege to the detriment of others. The public interest requires that traffic in alcoholic liquor be regulated and controlled by the state, through the medium of a state liquor division vested with exclusive authority to import and sell such liquor, with certain exceptions, which are subject to its regulation.

I.C. § 23-102. This Court has similarly recognized that "the selling of intoxicating liquor is a proper subject for control and regulation under the police power." *Gartland v. Talbott*, 72 Idaho 125, 131, 237 P.2d 1067, 1070 (1951). Put another way, "[i]t is . . . universally accepted that no one has an inherent or constitutional right to engage in the business of selling or dealing in intoxicating liquors." *Id.* The district court failed to understand the constitutional parameters of a license to sell alcohol.

The district court further misunderstood Idaho's statutory regulations. Contrary to the district court's statement, it is not I.C. § 23-615 that directly affects whether a licensee may or may not continue to operate as a retail seller of alcohol. Rather, this provision places restrictions upon how the licensee may operate his retail alcohol business, stating in relevant part that:

> No person licensed pursuant to title 23, Idaho Code, or his or its employed agents, servants or bartenders shall sell, deliver or give away, or cause or permit to be sold, delivered, or given away, or allowed to be consumed, any alcohol beverage, including any distilled spirits, beer or wine, to:
> . . . .
> (2) Any person actually, apparently or obviously intoxicated.

The statute that does directly affect whether a licensee may or may not continue to operate as a retail seller of alcohol is I.C. § 23-933, which states in relevant part that:

> (1) The director may suspend, revoke, or refuse to renew a license issued pursuant to the terms of this chapter for any violation of or failure to comply with the provisions of this chapter or rules and regulations promulgated by the director or the state tax commission pursuant to the terms and conditions of this chapter.

In other words, when the State grants a licensee the privilege of selling alcohol, the licensee must accept the limitations on that privilege as set out in I.C. § 23-615. If the seller abuses the privilege by violating the limitations, the director may suspend his license pursuant to I.C. § 23-933. In any case, such regulation does not infringe upon any constitutionally protected activity. Consequently, neither of these statutes may be considered facially unconstitutional for overbreadth, because "[i]n a facial challenge to the overbreadth . . . of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) (footnotes omitted).

In sum, selling alcohol is not constitutionally protected conduct, and thus, statutes that regulate the sale of alcohol, such as I.C. § 23-615 and I.C. § 23-933, cannot be challenged as unconstitutionally overbroad. The district court therefore erred in determining that I.C. § 23-615 is facially unconstitutional for overbreadth.

**B. The district court erred in concluding that I.C. § 23-615 is unconstitutionally vague.**

Boyd argues that I.C. § 23-615 is impermissibly vague on its face. He argues that when examining the physiological effects of alcohol consumption, there is no standard by which to measure when a person is "actually," "obviously," or "apparently" intoxicated, because the common person is not trained to recognize symptoms that a police officer or ABC investigator might notice. Despite determining that substantial evidence supported the hearing officer's determination that Moler served alcohol to an apparently or obviously intoxicated person, the district court embraced Boyd's legal reasoning and determined that I.C. § 23-615 is unconstitutionally vague.

Although the district court repeatedly cited *Hoffman* in support of its legal conclusion, the district court either ignored or misunderstood the Supreme Court of the United States' analysis regarding vagueness. "A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process. To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Hoffman*, 455 U.S. at 497. "[T]he challenger must show that the enactment is invalid *in toto*." *State v. Korsen*, 138 Idaho 706, 712, 69 P.3d 126, 132 (2003) (citing *Hoffman*, 455 U.S. at 497). *Hoffman* explicitly cautioned that one "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law

as applied to the conduct of others." 455 U.S. at 495. *Hoffman* then reiterated this proposition in an accompanying footnote: "'One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.'" *Id.* at 495 n.7 (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)). Simply put, "the traditional rule of standing for facial attacks provides that one to whom application of a statute is constitutional may not attack the statute on grounds that it might be unconstitutional when applied to other people or situations." 16 Am. Jur. 2d Constitutional Law § 137 (2009).

In this case, the hearing officer found that "[Moler] thought that she was familiar enough with [Anderson] that she knew when he was under the influence . . . . [Moler] indicated that when [Anderson] had too much to drink he became belligerent, cocky, and talked with an attitude." The hearing officer also stated that

> [Harris] observed [Anderson] to resent his efforts to identify [Anderson] with [Anderson] being belligerent, obnoxious, and confrontational. . . . [Harris'] observation is consistent with how [Moler] described she had seen [Anderson] when he was under the influence. Orofino Sheriff Deputy Carson, who at the time worked for the City of Orofino, also observed [Anderson] outside the bar and observed blood shot eyes, and [Anderson] being belligerent and appearing unwilling to follow [Harris'] directions.

*Id.* The hearing officer continued that Davidson "observed [Anderson] approach the bar, push items off of the bar and reach across the bar to shake someone's hand who did not appear to want to shake [Anderson's] hand."

Finally, the hearing officer concluded that Moler's

> observations of what [Anderson] looks like when he is intoxicated are consistent with the observations of [Harris], [Davidson], and Deputy Carson. Even though it was a busy evening [Moler] had sufficient opportunity to determine whether it was appropriate to serve beer to [Anderson].
>         [Boyd's] bartender sold an alcoholic beverage to an apparently intoxicated [Anderson] in violation of Idaho Code § 23-615.

The district court upheld the hearing officer's factual determination on this issue.[3]

---

[3] The district court upheld the hearing officer's conclusion on this issue, albeit upon a mischaracterization of the hearing officer's memorandum decision.
 The district court stated that "[i]n rendering his decision, the Hearing Officer concluded that the observations of 'Ms. Molar [sic], Corporal Davidson, Sergeant Harris and Deputy Carson' indicated that Mr. Anderson was apparently or obviously intoxicated." The court then included the following footnote: "Presumably, the inclusion of Ms. Moler's name was inadvertent, as the Hearing Officer referred earlier in the decision to Ms. Moler's belief that Mr. Anderson was *not* intoxicated." The district court continued that:
>        Although Ms. Moler did not testify that she observed [Anderson] exhibiting behavior consistent
>        with intoxication, the Hearing Officer determined that the observations of the officers were

The district court's decision that there was substantial evidence supporting the factual finding that Moler violated I.C. § 23-615 simply cannot be reconciled with the district court's legal conclusion that the statute is unconstitutionally vague. Indeed, during oral argument, Boyd's attorney acknowledged that the district court's resolution of this constitutional question was "utterly inconsistent" with its decision on the factual question of whether Moler served alcohol to an apparently or obviously intoxicated person. As Boyd's bartender engaged in "conduct that is clearly proscribed," the statute is not vague as applied in this case, and Boyd "cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman*, 455 U.S. at 495. Accordingly, we conclude that the district court erred in its determination that I.C. § 23-615 is unconstitutionally vague.

## IV. CONCLUSION

The district court erred in concluding that I.C. § 23-615 is unconstitutional. The decision of the district court is reversed, this case is remanded, and the district court is instructed to vacate its order staying the suspension of Boyd's license. Costs are awarded to ABC.

Chief Justice EISMANN, Justices J. JONES, W. JONES and Justice Pro Tem TROUT **CONCUR**.

---

> consistent with Ms. Moler's testimony of Mr. Anderson's behavior when he was intoxicated before this particular episode.
>> In any event, the Hearing Officer was apparently persuaded by the weight of the officer's testimony. The testimony of the three law enforcement agents trained to recognize signs of intoxication was substantial enough to support the Hearing Officer's decision that the police officers concluded Mr. Anderson was obviously intoxicated.

This characterization of the hearing officer's decision makes it seem as though it was the testimony of law enforcement and law enforcement alone that persuaded the hearing officer that Anderson was apparently or obviously intoxicated. In fact, as discussed above, it was this testimony *combined* with Moler's testimony that she was familiar with Anderson's behavior when he is intoxicated that persuaded the hearing officer.